IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 13-cr-00392-CMA

---

UNITED STATES OF AMERICA,

Plaintiff,

vs.

GEORGE T. BROKAW, JOHN J. PAWELSKI, MIMI M. VIGIL, and CLARA M. MUELLER,

Defendants.

---

Proceedings before MICHAEL E. HEGARTY, United States Magistrate Judge, United States District Court for the District of Colorado, commencing at 2:26 p.m., October 2, 2013, in the United States Courthouse, Denver, Colorado.

---

WHEREUPON, THE ELECTRONICALLY RECORDED PROCEEDINGS ARE HEREIN TYPOGRAPHICALLY TRANSCRIBED...

---

APPEARANCES

MATTHEW KIRSCH and MARTHA PALUCH, Assistant United States Attorneys, appearing for the government.

---

INITIAL APPEARANCE

P R O C E E D I N G S

(Whereupon, the within electronically recorded proceedings are herein transcribed, pursuant to order of counsel.)

THE COURT: Case No. 13-cr-392, United States of America versus George Thomas Brokaw, John J. Pawelski, Mimi M. Vigil, and Clara M. Mueller.

For the United States, please.

MR. KIRSCH: Good afternoon, Your Honor. Matthew Kirsch and Martha Paluch appearing for the United States.

THE COURT: Thank you.

Okay. Mr. Brokaw, please identify yourself.

DEFENDANT BROKAW: Excuse me?

THE COURT: Thank you. I wanted you to identify yourself.

Mr. Pawelski?

DEFENDANT PAWELSKI: Yes, sir.

THE COURT: Am I getting that name correct?

DEFENDANT PAWELSKI: Pawelski.

THE COURT: Paw --

DEFENDANT PAWELSKI: Pawelski.

THE COURT: Pawelski. Okay. Thank you.

Ms. Vigil?

DEFENDANT VIGIL: (No audible response.)

THE COURT: And Ms. Mueller?

DEFENDANT MUELLER: (No audible response.)

THE COURT: Okay. Thank you.

Do you have a motion first, Mr. Kirsch?

MR. KIRSCH: I do, Your Honor. At this point, since all of these defendants have now been arrested, the government would move to unseal this case.

THE COURT: That'll be granted.

Okay. I have before me an Indictment, 13-cr-392, against the previously named individuals. The Indictment's brought under 18 United States Code, Section 286, that's Count 1. Counts 2 through 13, 18 United States Code, Section 287. Count 14, 18 United States Code, Section 371. Counts 15 to 18, 26 United States Code, Section 7212(a).

As to Count 1, alleging that the four named defendants engaged in a conspiracy to file false claims for refund with the IRS. Counts 2 through 7 against only Mr. Brokaw, under 18 United States Code, Section 287, a false claim for refund. Counts 8 to 11 only against Mr. Pawelski -- is that right?

DEFENDANT PAWELSKI: Correct.

THE COURT: Did I get that right? False claim for refund. Count 12 against Ms. Vigil, false claim for a refund. Count 13 against Ms. Mueller, false claim for a refund. Count 14 against all four, conspiracy to corruptly endeavor to obstruct or impede the due administration of the

Internal Revenue Laws. Count 15 only against Mr. Brokaw, corrupt endeavor to obstruct or impede the due administration of the Internal Revenue Laws. Count 16 against Mr. Pawelski, again, corruptly endeavor to obstruct or impede the due administration of the Internal Revenue Laws. Count 17 only against Ms. Vigil, the same charge. Count 18 against Ms. Mueller, the same charge.

Potential penalties for those offenses. Count 1, which is against all four, not more than ten years in prison, not more than a $250,000 fine, or both, not more than three years' supervised release, and a $100 special assessment. Counts 2 through 7, only against Mr. Brokaw, not more than five years in prison, not more than a $250,000 fine, or both, not more than three years' supervised release, and a $100 special assessment. Count 8 through 11 against Mr. Pawelski, not more than five years in prison, not more than a $250,000 fine, or both, not more than three years' supervised release, and a $100 special assessment. Count 12 against Ms. Vigil, not more than five years in prison, not more than a $250,000 fine, or both, not more than three years' supervised release, and a $100 special assessment. Count 13 against Ms. Muller, again, not more than five years in prison, not more than a $250,000 fine, or both, not more than three years' supervised release, and a $100 special assessment. Count 4 against everyone -- or 14,

excuse me, the same penalty, not more than five years in prison, not more than a $250,000 fine, or both, not more than three years' supervised release, and a $100 special assessment.

And Count 15, again, I think is brought against each of you individually, so I'll only read that penalty once. That's 15, 16, 17 and 18, not more than three years in prison, not more than a $5,000 fine, or both, not more than one year supervised release, and a $100 special assessment.

You all have the right --

MR. KIRSCH: Your Honor, I --

THE COURT: Yes?

MR. KIRSCH: -- I apologize for interrupting, but I think that there's actually a typographical error in the penalty sheets.

THE COURT: Okay.

MR. KIRSCH: I apologize for that. The fine for the last count in which each defendant is named is also a maximum $250,000, not $5,000.

THE COURT: All right. Very good.

MR. KIRSCH: I apologize.

THE COURT: With that added, then, any other changes, Mr. Kirsch?

MR. KIRSCH: No, sir. Thank you.

THE COURT: Each of you have the right to remain silent. Anything you say in court or to the United States could be used against you in the prosecution of this case. You each have the right to a trial by jury. At that trial you're presumed innocent until proven guilty, and the government's required to prove you're guilty beyond a reasonable doubt. You can challenge the government's evidence, put on evidence that you're innocent. If you're found guilty, appeal that conviction, and each of you is entitled to counsel. If you cannot afford an attorney, I will appoint one for you. Each of you have requested appointment of counsel, and I find that you qualify for counsel.

Mr. Brokaw, you're the first name on the list, so you will get a federal public defender. Mr. Pawelski, Ms. Vigil, and Ms. Muller will be appointed members of our CJA panel to represent you.

Mr. Kirsch?

MR. KIRSCH: Your Honor, I apologize again. I believe that the public defender's office has previously represented a person who at least is a potential witness in this matter, and so I suspect that they may have a conflict with respect to Mr. Brokaw.

THE COURT: Okay. And --

MR. KIRSCH: That -- that person's name is Ronald

Hoodenpyle. He was previously represented by Ed Harris in the public defender's office.

THE COURT: All right. And you believe that would create a conflict?

MR. KIRSCH: I do, Your Honor. I'm aware of at least one instance during which Mr. Brokaw and Mr. Hoodenpyle were together speaking to a law enforcement officer.

THE COURT: Okay. Well, in an abundance of caution, then, I'll appoint the CJA panel to represent all four defendants.

All right. Turning to the issue, Mr. Kirsch, of the government's position on detention.

MR. KIRSCH: Your Honor, we have concerns that all four of these defendants could pose a risk of flight. With respect to Mr. Brokaw and Mr. Pawelski, we're asking for the three-day period, partly to allow the probation office time to investigate whether or not home detention with GPS monitoring would be a viable option for bond for Mr. Brokaw and Pawelski.

With respect to Ms. Vigil and Ms. Mueller, it's the government's position that there are a combination of conditions that could ensure that they would appear. Those conditions, in our view, would include a $25,000 unsecured bond, a travel restriction to Colorado accompanied by a

requirement that they either surrender existing passports or obtain no new passports, a requirement that they not possess any firearms, and, for those two, a special condition that they not act as a notary public.

THE COURT: Okay. Let me explain to you what we're talking about. With any case in federal court, any criminal case, there's a statute that says the Executive Branch, speaking here through the U.S. Attorney's Office, has a right to ask for three days' detention, that's three days, business days, not calendar days. That federal statute prohibits me from releasing you if the United States seeks detention. Mr. Kirsch has just stated that with regard to Mr. Pawelski and Mr. Brokaw, the United States is, at the moment, seeking that detention, which then would prohibit me from releasing you until Wednesday. No, Monday. Monday. But Mr. Kirsch said it's for the purpose of investigating suitable monitoring from your home, which it takes several days for the U.S. Probation Office to go out to a home anyway and make sure it can be hardwired for electronic monitoring.

With regard to Ms. Vigil and Mr. Mueller (sic), the United States is not asking for detention but is agreeing to release under certain conditions. Let me go over those first. Ms. Vigil, this will be an unsecured bond of $25,000, meaning that the United States is not -- the

Court is not requiring you to post anything, okay, but if you violate the conditions of your release they could seek somehow to forfeit $25 -- $25,000 from you. You do have a couple of particular conditions that you need to comply with. Number one, you can't have any violation of federal, state or local law, or else that would violate the conditions of your release and you'd be brought back into detention. You must cooperate in the collection of a DNA sample if that hasn't already -- already happened. You must advise the Court and the Pretrial Services office in advance before changing residence or telephone number, and you would have to appear at all future court appearances.

The special conditions would be you will be supervised by the U.S. Probation Office out of Colorado Springs, and they will tell you when you would need to appear before them in order to have a discussion with them. Do you have a job right now?

DEFENDANT VIGIL: No.

THE COURT: No. Are you disabled?

DEFENDANT VIGIL: No, I'm self-employed.

THE COURT: Oh, you're self-employed, okay. Well, you need to maintain that employment, and if somehow that goes away, you would need to be seeking employment. Do you have a passport?

DEFENDANT VIGIL: Yes.

THE COURT: Okay. That needs to be surrendered within 48 hours to the clerk's office here in this court. We don't have a clerk's office down in Colorado Springs, although I think they could surrender it to the probation office down there, couldn't they?

MS. MEADOR: (Inaudible).

THE COURT: You could surrender it to the probation office down there within 48 hours, that would be by Friday afternoon, and thereafter may not attempt to obtain a passport or any other international travel document. You must stay within the state of Colorado without permission from the Court.

This includes a condition that you may not have direct or indirect contact with your co-defendants. Are any of them related to you?

DEFENDANT VIGIL: No.

THE COURT: Okay. And you don't live with any of them?

DEFENDANT VIGIL: No.

THE COURT: All right. So you may not have contact with them. You may not possess a firearm, any destructive device or any weapon. You may not use excessive alcohol. And these are conditions that we place on everybody, they're not peculiar to you. You may not use or unlawfully possess any narcotic drug, and that includes marijuana. If you have

any contact with a law enforcement officer of any kind, you need to report that contact to the probation office within -- well, immediately. You may not act as an informant without permission from the Court, and I'm going to ask you a question: Can you agree to abide by a restriction that you not engage in any notary duties?

DEFENDANT VIGIL: I'm not a notary.

THE COURT: You're not a notary.

DEFENDANT VIGIL: No.

THE COURT: All right. So it would be unlawful for you to notarize stuff anyway, right?

DEFENDANT VIGIL: Yes.

THE COURT: All right. So there's -- I'm not going to include a condition that's a legal impossibility.

Do you understand all those?

DEFENDANT VIGIL: Yes.

THE COURT: Okay. Then the order is that you be released, but you need to stop by the marshals -- well, I guess you're already in their system -- if there's any more processing that the marshals need to do, but other than that, the order is that you be released.

Those are the same conditions for you, Ms. Mueller. Were you just listening to what I had to say?

DEFENDANT MUELLER: Yes.

THE COURT: Did you have any questions?

DEFENDANT MUELLER: I don't have any questions on that, but I did not request a court appointed attorney.

THE COURT: Okay.

DEFENDANT VIGIL: Everything else is very clear.

THE COURT: Well, you did technically because you filled out this financial affidavit. You're not required to fill out that affidavit --

DEFENDANT MUELLER: Oh, I didn't know that was what it was for.

THE COURT: Yeah. Yeah, the top of it says "Financial Affidavit in Support of a Request for an Attorney." We need to do a better job of explaining that to you, but do you want me to just throw that away?

DEFENDANT MUELLER: Please do.

THE COURT: All right. And do -- are you going to have an attorney?

DEFENDANT MUELLER: I will be able to get an attorney.

THE COURT: Very good.

DEFENDANT MUELLER: Thank you.

THE COURT: So, therefore, I'll rescind my order with regard to Ms. Mueller about appointment of a CJA lawyer, okay? But otherwise, did you understand everything about the conditions?

DEFENDANT MUELLER: Yes, I did, and I am a notary.

THE COURT: Okay. Can you agree not to act as a notary?

DEFENDANT MUELLER: I agree to put that away.

THE COURT: Okay. Now, we probably will have another hearing by Monday. Are you sure you can get your lawyer by Monday?

DEFENDANT MUELLER: I won't know until I get on the phone.

THE COURT: Okay.

DEFENDANT MUELLER: I hope so.

THE COURT: All right. Well, I'll tell you what. If you -- you know, you can always get an attorney from the court, and, you know, they have nothing to do with the court, they -- they're private lawyers whose job it is to represent you, we just happen to pay them, but you can have one of them in the meantime until you do get a lawyer, but if you don't get -- if you can't find one, you do qualify, so you should come back in and ask if that's necessary.

DEFENDANT MUELLER: Well, leave that in place, and then if I get an attorney --

THE COURT: I think I should.

DEFENDANT MUELLER: Okay. Thank you.

THE COURT: So I'm going to change myself again and ask that she be appointed CJA. If a CJA lawyer shows up and they're not needed, they know what to do, okay?

DEFENDANT MUELLER: (Inaudible.)

THE COURT: And with regard to, then, Mr. Brokaw and Mr. Pawelski, federal law requires that you be detained until Monday, at which time I'm assuming we'll enter similar orders of release, but they may include some kind of monitoring. Okay? So --

DEFENDANT PAWELSKI: Judge, I object. I -- I have a question for you.

THE COURT: You can ask a question, although I need to remind you that even questions can contain information, and you do have a right to remain silent and by asking a question you're waiving that right.

DEFENDANT PAWELSKI: We're -- we're -- you're talking three days. Today -- today is one. Today is Wednesday, Thursday, Friday?

THE COURT: It's business days. So Thursday is one day, Friday is another day, and Monday is the next business day.

DEFENDANT PAWELSKI: Judge, I'm here today.

THE COURT: I know, but the federal law is black and white, and I didn't write it, but I am required to comply with it, so...

DEFENDANT PAWELSKI: I believe -- I believe Mr. Kirsch is adding additional punishment to Mr. Brokaw and myself because we filed a complaint with the Postmaster

General against him, and that's on the public record. It was sent to the DOJ, his boss, and nothing has been done, so I believe that's why he wants us to stay in custody for a couple extra days.

THE COURT: Okay. Well, that's -- that's been made of record, all right?

All right. Anything further on this case, Mr. Kirsch?

MR. KIRSCH: What time is the hearing on Monday, Your Honor?

THE CLERK: Ten o'clock.

MR. KIRSCH: Okay.

THE COURT: That's next door, Judge Watanabe.

MR. KIRSCH: Yes, sir.

THE COURT: Okay. So, Mr. Brokaw and Mr. Pawelski are remanded to the custody of the United States Marshal. Ms. Vigil and Ms. Mueller ordered released after any processing, okay?

(Whereupon, the within hearing was then in conclusion at 2:43 p.m. on October 2, 2013.)

I certify that the foregoing is a correct transcript, to the best of my knowledge and belief, from the record of proceedings in the above-entitled matter.

/s/ Bonnie Nikolas                August 7, 2015

Signature of Transcriber                Date